# Morris, Nichols, Arsht & Tunnell llp

1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347

———

(302) 658-9200
(302) 658-3989 FAX

**Jack B. Blumenfeld**
(302) 351-9291
(302) 425-3012 FAX
jblumenfeld@mnat.com

May 9, 2022

The Honorable Colm F. Connolly                             *VIA ELECTRONIC FILING*
United States District Court for the
   District of Delaware
844 North King Street
Wilmington, DE 19801-3555

      Re:   *Koninklijke Philips N.V. v. Telit Wireless Solutions, Inc., et al.*
              C.A. No. 20-1708 (CFC)

Dear Chief Judge Connolly:

We represent the successors to named defendants Telit Communications PLC and Telit Wireless Solutions, Inc. ("Telit").[1][2]

In accordance with the Court's March 16, 2022 Order, Telit submits its proposal to try unenforceability first. For reasons discussed below, Telit believes this is the most efficient way to resolve this case. Telit's counsel has discussed this proposal with

---

[1] Telit Wireless Solutions, Inc. has been reorganized and the surviving entity is Telit IoT Solutions Inc. Likewise, Telit Communications PLC has been reorganized and the surviving entity is Telit Communications Ltd.

[2] Telit PLC moved to dismiss the original complaint based on lack of personal jurisdiction. Telit PLC, Telit Communications, Ltd. but submit this case management proposal in response to the Court's Order. If the non-U.S. entities are dismissed, Telit IoT Solutions Inc. would litigate unenforceability. We refer to "Telit" for convenience, not as an acknowledgement that PLC (or its successor, or parent) is the same company as the U.S. company, a principal or an agent, or that any company has lost its independent corporate status.

The Honorable Colm F. Connolly
May 9, 2022
Page 2

counsel for Koninklijke Philips N.V. ("Philips") several times, but the parties have not agreed on a procedure.

### Background – The ITC Proceeding

The same day it filed this six-patent case, Philips filed a separate four-patent case against Telit (C.A. No. 20-1711-CFC). That case was stayed pending a proceeding on the same four patents in the International Trade Commission ("ITC"). The Administrative Law Judge ("ALJ") in the ITC proceeding recently issued a 320-page "Final Initial Determination" ("FID"), and an additional 38-page decision on potential remedy and bonding. Relevant excerpts of the public version of the FID are attached as Exhibit A. The public version of the remedy opinion is not yet available. The ALJ held that all four asserted patents are unenforceable because Philips breached its disclosure obligations to the European Telecommunications Standards Institute ("ETSI") because it intentionally delayed declaring its Intellectual Property Rights ("IPR") as "essential" for six years *after* the relevant standards were enacted. (See Ex. A at 266-84).[3] [4]

Evidence presented in the ITC showed that Philips's corporate strategy was to delay declaration of its IPR to ETSI. Specifically, the named inventors, Philips's employees at the time, were long-standing attendees of standard-setting committees. They influenced those committees, yet told no one about their patents or applications – even though ETSI Rules required disclosure. Years later, after tens of millions of standard-compliant devices had been sold worldwide, and shortly before Philips began its licensing campaign, Philips declared its patents as "essential" to these standards. By then, users were locked into the standards.

For example, a named inventor (Baker) on all the ITC patents, as well as all patents in this action, submitted a technical proposal to a standard setting committee and filed a patent application on the **same subject matter** – **on the same day**. Philips asserted

---

[3] The ALJ also determined none of the patents was infringed and three of four were invalid.

[4] In addition, the ITC's Commission Investigation Staff, a neutral government office that participated in the ITC case as a party, supported Telit's motion to dismiss the investigation based on unenforceability; then supported Respondents before, during and after trial, as well as after Philips petitioned for review of the FID. Thus, an independent government arbiter agreed that Philips's late disclosures caused the asserted patents to be unenforceable.

The Honorable Colm F. Connolly
May 9, 2022
Page 3

the resulting patent was infringed by Baker's technical proposal.  Despite Philips's knowledge of the similarity of the subject matter, Philips waited over six years to declare that patent as "essential."

The ALJ held, in accordance with caselaw discussed below, that Philips had a duty to ETSI to declare its patents as essential *before* the standards were enacted, and that Philips's intentional delay in declaring its patents breached its contractual duty to ETSI, rendering the patents unenforceable.  (Ex. A at 278 and 270).

Philips's conduct with respect to the six patents at issue here mirrors its conduct with respect to the four patents the ALJ found to be unenforceable.  Telit's proposal, therefore, is to have an early resolution of the threshold issue of unenforceability based on Philips's systematic late disclosures of its IPR.  If successful, the unenforceability defense will be dispositive of this case, as well as the six-patent cases Philips has brought against other defendants (20-1707 and 20-1709).

Obviously, the complexity of litigating an issue based primarily on undisputed dates and activities related to standard setting is much less than litigating a six-patent case before a jury concerning validity, infringement and the related FRAND issues.

Although Philips petitioned the ITC Commission to review the ALJ's decision, Telit believes the findings and conclusions are correct, and the petition will be denied.

**Legal Standard — Late Declaration**

In *Core Wireless Licensing S.A.R.L. v. Apple Inc.*, 899 F.3d 1356, 1367-68 (Fed. Cir. 2018), the Federal Circuit held (Ex. A at 267-68; square brackets by the ALJ; emphasis added throughout, unless stated otherwise):

> "**ETSI member's duty to disclose a patent application on particular technology attaches at the time of the proposal**…" and an IPR owner had a "duty to disclose its IPR no later than [the date the standard was adopted]."

The Court in *Apple, Inc. v. Motorola Mobility, Inc.*, 886 F. Supp.2d 1061, 1085 (W.D. Wis. 2012), reached the same conclusion (Ex. A at 270; emphasis by the ALJ):

> [M]embers of ETSI should disclose [IPR] that they know are relevant to potential standards while the standard is being discussed and **before the standard is adopted**.

The Honorable Colm F. Connolly
May 9, 2022
Page 4

See also 1083 ("Motorola was obligated by ETSI policy to make a bona fide effort to identify essential intellectual property rights that might be required by the technical proposal *before the adoption of the technical proposal into the standard*.")  See also Ex. A at 268 and n. 58, 273, 279.

### ETSI Requires Intellectual Property Rights to be Disclosed *Before* a Standard is Enacted

The ALJ discussed in considerable detail ETSI's Rules and interpretive Guide that repeatedly emphasize the need for timely disclosure of any IPR (*i.e.*, before a standard is enacted) that ***may be or may become*** essential to a standard. (Ex. A at 268-69, 272-74, 278-80).  "IPR" includes patent *applications*, not just issued patents, further demonstrating that waiting until a patent issues is unacceptable.  Philips agrees that patent applications must be disclosed.  (Ex. A at 273).

Clause 4.1 of the ETSI Rules provides (Ex. A at 269; emphasis by ALJ):

> In particular, a MEMBER *submitting* a technical proposal for a STANDARD or TECHNICAL SPECIFICATION ***shall, on a bona fide basis, draw the attention of ETSI*** to any of that MEMBER's IPR ***which might be ESSENTIAL if that proposal is adopted***.

Consequently, the ALJ held (Ex. A at 276; see also 268-70, 283):

> Philips had an obligation to disclose its IPR when it made a "formal submission of a technical solution" (RX-2446. 55 (ETSI Directives), § 2.3.3), and "participate[d] in or contribute[d], directly or indirectly, to the work of" a "Technical Body" (RX-2446.64, § 4.6.3.3).

The ETSI Guide, which was designed to help understand and implement the Institute's IPR Policy, "placed special emphasis on the '*timely disclosure of Essential IPRs* …'" (Ex. A at 273; *see also* 279-80).

### Philips Intentionally Delayed Declaring its IPR

Philips's delays were not happenstance – they occurred with respect to all ten of the asserted patents. (See Appendix 1 compiling delays concerning the patents asserted here).  Philips's witness testified the reason for the late disclosures was that Philips's licensing program had "been dormant *waiting for a significant market to develop*."

The Honorable Colm F. Connolly
May 9, 2022
Page 5

(Ex. A at 271). He admitted that Philips waited until after the standard was enacted to declare its IPR. (*Id.; see also* Ex. A at 272).

The ALJ found that "Philips did not act with diligence" in declaring its IPRs to ETSI, "as French law required," citing several Philips admissions (Ex. A at 271), determining "[t]hese admissions show Philips made a strategic decision to delay." *(Id.* at 272).

The ALJ further held (Ex. A at 268):

> [T]he evidence shows Philips had a duty of disclosure to the standard setting organization, and it breached that duty.
> \*\*\*
> This is the type of opportunistic delay that is forbidden by ETSI's policy, and amounts to "patent ambush," which ETSI specifically addressed as a key problem. … Philips's [admission] "waiting for a significant market to develop" is evidence that Philips failed to engage in "reasonable endeavors" or a "bona fide" effort to declare its IPR." (*Id.* at 271).

The ALJ determined: "Submitting a technical proposal to 3GPP and filing a patent application on the same day, yet waiting for years after that to inform ETSI, is evidence of 'intentional nondisclosure.'"[5] (Ex. at 278, citing *Qualcomm Inc. v. Broadcom Corp.*, 548 F.3d 1004, 1020-21 n.8 (Fed. Cir. 2008).

Ultimately, the ALJ concluded:

> [I]t has been shown by clear and convincing evidence that the four asserted patents are unenforceable under the doctrine of implied waiver. (Ex. A at 267).

### The Underlying Facts Here

Philips's stated practice of not declaring its IPR as essential until well after the relevant standards had been enacted is unlikely to be any different regarding the six patents asserted here than it was for the four patents found to be unenforceable in the

---

[5] ETSI has a sister organization called "3GPP" (Third Generation Partnership Project).

The Honorable Colm F. Connolly
May 9, 2022
Page 6

ITC. The standard enactment and IPR declaration dates overlap between the ITC patents and the six asserted here, as do the named inventors. The results, therefore, are likely to be the same.

Just as with the four ITC patents, Philips delayed many years after the standards had been enacted before declaring as essential the six patents asserted here. (See Appendix 1). Based on the evidence introduced in the ITC (and the ALJ's holding), Telit is confident that Philips's delayed declarations concerning the six patents asserted here were intentional, in breach of its duty to ETSI, and a violation of the law.

### Discovery

Telit's proposal to try unenforceability first would lead to a streamlined resolution. Telit believes a limited number of interrogatories and document requests targeted toward Philips's and the named inventors' interaction with ETSI/3GPP technical committees, Philips's declarations to ETSI, and its patent filings will suffice.

Following Philips's document production, Telit will need deposition testimony from the three named inventors, focusing on their involvement in the relevant technical committees. Telit also may require a Rule 30(b)(6) deposition of Philips.

The relevant facts in the ITC were undisputed and are likely to be here as well. We hope Philips will stipulate to the dates the relevant standards were enacted, the dates Philips's employees made submissions to the technical committees, and the dates on which it made the declarations to ETSI. We also expect that Philips will agree to allow discovery obtained in the ITC to be used here.

After a short period of discovery, at the Court's discretion, Telit will either file a motion for summary judgment, or the parties would have a short bench trial, each of which should take less than a day.

### Philips's Proposal Will not Streamline this Case

As Telit understands Philips's proposal, Philips wants to try the FRAND issues to a jury first, on the strength of a statement in the ALJ's remedy opinion that says: "the evidence shows that Philips's offers to Telit, Thales and Quectel were all within a FRAND range." Even assuming that statement were correct (and Telit disagrees), trying that issue first will not shorten or simplify the case, for the following reasons:

- Regardless of the FRAND verdict, the Court would then have to try non-infringement, invalidity and unenforceability of as many as six patents, four of

The Honorable Colm F. Connolly
May 9, 2022
Page 7

> which are also involved in IPRs before the Patent Trial and Appeal Board, which may affect any FRAND determination, as may non-infringement holdings.
>
> - FRAND issues are by their nature complex and will require considerable fact and expert discovery and testimony at trial, especially vis-à-vis Telit.
>
> - As the ALJ's remedy opinion stated: "Lacking from respondents' prehearing brief on behalf of Telit and Quectel was any argument that Philips's offers were not FRAND nor that Telit's and Quectel's counter-offers were FRAND." Telit, therefore, did not litigate the FRAND issue at the ITC.

In any case, Philips's supposed FRAND rates, were offered well before the ALJ invalidated and held not infringed the ITC patents, which presumably were among Philips's best. Those offers are now obsolete.

Philips's proposal, therefore, is just time shifting because liability and unenforceability would still have to be tried. Philips's proposal would not improve efficiency, and might require the Court to try an issue, which in the absence of liability, would never arise.

**Conclusion**

Telit submits that the most efficient procedure to resolve this case is for the Court to determine first whether the asserted patents are unenforceable because of Philips's intentional multi-year delays in declaring them as "essential." Telit believes that the issue should be ready for resolution by the end of this year, or early next year.

Respectfully,

*/s/ Jack B. Blumenfeld*

Jack B. Blumenfeld (#1014)

JBB/bac
Attachments

cc:   Clerk of the Court (via hand delivery; w/attachments)
      All Counsel of Record (via electronic mail; w/attachments)

# APPENDIX 1

## LATE DISCLOSURE -- ASSERTED PATENTS IN THE 1708 CASE

| US 9,178,577 ||||||| 
|---|---|---|---|---|---|---|
| **Earliest Foreign Priority Filing Date** | **U.S. Filing Date** | **Issue Date** | **Citations to Standard in Complaint** | **Date Accused Standard Was Enacted** | **Date Philips Declared Asserted Patent Essential to ETSI** | **Declaration Delay from Date Relevant Standard was Enacted (Years)** |
| Apr. 25, 2001 | Apr. 23, 2002 | Nov. 3, 2015 | 36.321 | Jun. 18, 2009 (v8.6.0) | Dec. 3, 2014 (LTE – to 36.321)[6] | 5+ |
|  |  |  | 36.211 | Jun. 18, 2008 (v8.3.0) |  | 6+ |
|  |  |  | 36.212 | Dec. 16, 2009 (v9.0.0) |  | ~5 |
|  |  |  | 36.213 | Dec. 16, 2009 (v9.0.0) |  | ~5 |

---

[6]  Although Philips had an earlier declaration to UMTS (on November 26, 2009), Philips has not accused UMTS of infringement.

| US 9,635,599 ||||||
|---|---|---|---|---|---|---|
| **Earliest Foreign Priority Filing Date** | **U.S. Filing Date** | **Issue Date** | **Citations to Standard in Complaint** | **Date Accused Standard Was Enacted** | **Date Philips Declared Asserted Patent Essential to ETSI** | **Declaration Delay from Date Relevant Standard was Enacted (Years)** |
| Apr. 25, 2001 | Oct. 1, 2015 | Apr. 25, 2017 | 36.321 | Jun. 18, 2009 (v8.6.0) | Dec. 3, 2014 (LTE to 36.321) (family declared; apparently the '599 was never declared essential) [7] | 5+ |
| | | | 36.211 | Jun. 18, 2008 (v8.3.0) | | 6+ |
| | | | 36.212 | Dec. 16, 2009 (v9.0.0) | | ~5 |
| | | | 36.213 | Dec. 16, 2009 (v9.0.0) | | ~5 |

---

[7] Philips had an earlier declaration to UMTS, (on November 26, 2009) for this family; however, Philips has not accused UMTS of infringement.

| US 7,089,028 | | | | | | |
|---|---|---|---|---|---|---|
| **Earliest Foreign Priority Filing Date** | **U.S. Filing Date** | **Issue Date** | **Citations to Standard in Complaint** | **Date Accused Standard Was Enacted** | **Date Philips Declared Asserted Patent Essential to ETSI** | **Declaration Delay from Date Relevant Standard was Enacted (Years)** |
| Jan. 16, 1999 | Jan. 6, 2000 | Aug. 8, 2006 | 25.214 | Oct. 18, 2000 (v3.4.0) | Aug. 28, 2003 (UMTS to 25.214) | ~3 |
| | | | 23.002 | Oct. 13, 1999 (v3.1.0) | | ~4 |
| | | | 25.211 | Apr. 23, 1999 (v2.0.0) | | 4+ |
| | | | 25.331 | Oct. 6, 2000 (v3.4.0) | | ~3 |

3

| US 8,195,216 ||||||| 
|---|---|---|---|---|---|---|
| **Earliest Foreign Priority Filing Date** | **U.S. Filing Date** | **Issue Date** | **Citations to Standard in Complaint** | **Date Accused Standard Was Enacted** | **Date Philips Declared Asserted Patent Essential to ETSI** | **Declaration Delay from Date Relevant Standard was Enacted (Years)** |
| Jan. 16, 1999 | Jun. 17, 2004 | Jun. 5, 2012 | 25.214 | Oct. 13, 1999 (v3.0.0) | Aug. 28, 2003 (UMTS to 25.214) (family declared; apparently the '216 patent was not declared essential) | ~4 |
| | | | 23.002 | Oct. 13, 1999 (v3.1.0) | | ~4 |
| | | | 25.101 | Dec. 17, 1999 (v3.1.0) | | ~4 |
| | | | 25.211 | Apr. 23, 1999 (v2.0.0) | | 4+ |

4

| US 8,134,929 ||||||| 
| **Earliest Foreign Priority Filing Date** | **U.S. Filing Date** | **Issue Date** | **Citations to Standard in Complaint** | **Date Accused Standard Was Enacted** | **Date Philips Declared Asserted Patent Essential to ETSI** | **Declaration Delay from Date Relevant Standard was Enacted (Years)** |
|---|---|---|---|---|---|---|
| May 3, 2003 | PCT filed Apr. 20, 2004, US stage entered on Oct. 31, 2005 | Mar. 13, 2012 | 25.214 | Jun. 21, 2005 (v6.6.0) | Nov. 26, 2009 (UMTS to 25.214) | 4+ |
| | | | 23.002 | Oct. 13, 1999 (v3.1.0) | | 10+ |
| | | | 25.211 | Jan. 5, 2005 (v6.3.0) | | ~5 |
| | | | 25.212 | Jan. 5, 2005 (v6.3.0) | | ~5 |
| | | | 25.213 | Jan. 5, 2005 (v6.1.0) | | ~5 |

| US 10,257,814 ||||||| 
|---|---|---|---|---|---|---|
| **Earliest Foreign Priority Filing Date** | **U.S. Filing Date** | **Issue Date** | **Citations to Standard in Complaint** | **Date Accused Standard Was Enacted** | **Date Philips Declared Asserted Patent Essential to ETSI** | **Declaration Delay from Date Relevant Standard was Enacted (Years)** |
| Dec. 14, 2006 | PCT filed Dec. 6, 2007, US stage entered on Jun. 9, 2009 | Apr. 9, 2019 | 25.212 | Mar. 22, 2007 (v7.4.0) | Nov. 26, 2009 (UMTS to 25.212) | 2+ |
| | | | 25.201 | Mar. 22, 2007 (v7.2.0) | | 2+ |
| | | | 25.211 | Mar. 22, 2007 (v7.1.0) | | 2+ |
| | | | 25.213 | Mar. 22, 2007 (v7.1.0) | | 2+ |
| | | | 25.331 | Apr. 9, 2007 (v7.4.0) | | 2+ |

| Patent No. | Delay from Earliest Priority Date to Declaration | Delay from Standard Enactment to Declaration |
|---|---|---|
| US 9,178,577 | 13 years, 7 months | 4 years, 11 months (shortest delay) to 6 years, 5 months (longest delay) |
| US 9,635,599 | 13 years, 7 months | 4 years, 11 months (shortest delay) to 6 years, 5 months (longest delay) |
| US 7,089,028 | 4 years, 7 months | 2 years, 10 months (shortest delay) to 4 years, 4 months (longest delay) |
| US 8,195,216 | 4 years, 7 months | 3 years, 8 months (shortest delay) to 4 years, 4 months (longest delay) |
| US 8,134,929 | 6 years, 6 months | 4 years, 5 months (shortest delay) to 10 years, 1 month (longest delay) |
| US 10,257,814 | 2 years, 11 months | 2 years, 7 months (shortest delay) to 2 years, 8 months (longest delay) |