IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KONINKLIJKE PHILIPS N.V., <br><br> Plaintiff <br><br> v. <br><br> TELIT WIRELESS SOLUTIONS, INC., TELIT COMMUNICATIONS PLC, <br><br> Defendants. | C.A. No.: 20-1708 (CFC) |

**PHILIPS' RESPONSES TO TELIT'S CONCISE STATEMENT OF <u>UNDISPUTED MATERIAL FACTS</u>**

*Of Counsel*:

Eley O. Thompson
FOLEY & LARDNER LLP
321 North Clark Street, Suite 2800
Chicago, IL 60654-5313
(312) 832-4359
ethompson@foley.com

Kevin M. Littman
Lucas I. Silva
FOLEY & LARDNER LLP
111 Huntington Avenue
Suite 2500
Boston, MA 02199-7610
(617) 342-4000
klittman@foley.com
lsilva@foley.com

Dated:  September 20, 2023

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Adam W. Poff (No. 3990)
Robert M. Vrana (No. 5666)
Alexis N. Stombaugh (No. 6702)
1000 N. King Street
Wilmington, DE 19801
(302) 571-6600
apoff@ycst.com
rvrana@ycst.com
astombaugh@ycst.com

*Attorneys for Plaintiff*
*Koninklijke Philips N.V.*

| Telit's Statement | Philips' Response |
|---|---|
| 1. Wireless communications standards are set by ETSI (the European Telecommunication Standards Institute). (See D.I. 96 at 6, n.3). | Admitted. |
| 2. ETSI is associated with an organization called 3GPP (3rd Generation Partnership Project), which has technical committees that discuss various technology options, then select ones that ultimately become standards for the entire wireless industry worldwide. (Ex. 1, Tr. 35:19-36:15; see also Ex. 2 Tr. 91:2-10,92:8-13). | Admitted. |
| 3. The named inventors of the asserted patents participated in the 3GPP technical committee called RAN1 [Radio Access Network]. (Ex. 3 ¶¶13-14,16,18; Ex. 4, Tr. 23:15-24:23,26:9-16,26:24-27:10; Ex. 5 Tr. 78:7-13). | Admitted. |
| 4. ETSI Rule, 4.1, has two clauses (Ex. 6 at 34) (emphasis added throughout):<br>[1] Subject to Clause 4.2 [relating to searches] below, each MEMBER shall use its reasonable endeavours, *in particular during the development of a STANDARD or TECHNICAL SPECIFICATION where it participates*, to inform ETSI of ESSENTIAL IPRs [Intellectual Property Rights] in a timely fashion.<br>[2] In particular, a MEMBER *submitting a technical* proposal for a STANDARD or TECHNICAL | Denied. Rule 4.1 does not have two separate "clauses". It has two sentences reflecting one obligation. Ex. 6,[1] ¶¶125-132; Ex. 69, ¶515.<br><br>Further ambiguous as to the version of Rule 4.1; quoted language reflects changes made in 2005. *Compare* Ex. 40, KPNV0015459 *with* D.I. 162 Ex. 6, Telit20201_017347. |

---

[1] Citations (apart from those in Telit's statements) to "Ex.__" without a "D.I." refer to the exhibits to the previously filed Declaration of Lucas Silva – D.I. 148 & 157 (two volumes).

| | |
|---|---|
| SPECIFICATION shall, on a bona fide basis, *draw the attention of ETSI to any of that MEMBER's IPR **which might be ESSENTIAL if that proposal is adopted***. | |
| 5. The first clause of the rule addresses ETSI members that participated in standard setting meetings. The second clause addresses participants that submitted technical proposals. (Ex. 7 ¶37; see also Ex. 6 at 34). | Denied. There are not two clauses (*see* above, ¶4). Further, neither of the sentences is limited to certain members or participants. |
| 6. IPR includes pending patent applications. (Ex. 7 ¶51, Ex. 6 at Telit2021_017325). | Admitted. |
| 7. "Adopted" means the date when ETSI publishes a standard. (See Ex. 6 at Telit2021_017325). | Denied. The term "adopted" is undefined in the Policy as it is not in capital letters. *See* Ex. 1, at KPNV0038103, Clauses 2, 4.1. |
| 8. Rule 4.1 has been in effect since 1994 with some modifications. (Ex. 6, at Telit20201_017334, 347; Ex. 9 ¶33). In 2005, the second sentence was unchanged, but the first sentence was changed to add "in particular during the development of a STANDARD…" (Ex. 6, at Telit20201_017347; Ex. 9 ¶33). | Denied if suggesting second sentence was unchanged between 1994-2005. *Compare* Ex. 40, at KPNV0015459 *with* D.I. 162 Ex. 6, at Telit20201_017347. Otherwise admitted. |
| 9. To help interpret the Rules and to give Chairs of the technical committees guidance, ETSI published the Chairman's Guide in the 1990s. (See Ex. 10, at KPNV0020632,637). At the beginning of each technical committee meeting, the Chair was required to make a "call" for declaration of IPR to the participants. (Ex. 6 at 54 §2.3.2 and 65; Ex. 10 §3.1.3 at 9). | Denied. There is no call for "declaration of IPR to the participants." Meetings begin with a "Call for IPRs," which serves as an invitation to members to investigate whether there is any relevant IPR and to subsequently notify respective Organizational Partners (such as ETSI). The "Call for IPRs" does not allow for IPRs to be disclosed and considered during the 3GPP meeting. Ex. 10, ¶¶80-82. |

| | |
|---|---|
| | Further denied as the cited Chairman's Guide was published in 1997 and has a purpose of "help[ing] Chairmen and others involved in ETSI's technical standardization activities to understand the institute's IPR Policy and the way it operates."  D.I. 162 Ex. 10, at KPNV0020637.<br><br>Further denied as "Rules" is undefined and ambiguous. |
| 10. The asserted Philips patents are U.S. Patent Nos. 7,089,028, 8,195,216, 9,178,577, 9,635,599, 8,134,929, and 10,257,814. (D.I. 61, at 32). (Referred to by the last three digits). | Admitted. |
| 11. Philips' employees Timothy J. Moulsley and Matthew P. J. Baker are named inventors of the asserted patents. (Ex. 11; Ex. 12; Ex. 13; Ex. 14; Ex. 15; Ex. 16).  They were actively involved in 3GPP technical committees prior to the enactment of the standards at issue, and attended RAN1 technical committee meetings where the relevant wireless communications standards were created. (Ex. 3 ¶¶26,35,45,50-51,80-81,98-99,105,109,120,124-25,127,137, 142, 163. | Admitted. |
| 12. Philips employed Moulsley from January 1984 to December 2008; he was a Philips consultant until 2023. (Ex. 3 ¶17).  Philips had a standardization group, and either Moulsley or Baker was the team leader of Philips' 3GPP | Denied for insufficient evidence.  Telit did not attach as exhibits the portions of the deposition transcripts cited in Min's report. |

| | |
|---|---|
| standardization activities project. (Ex. 3 ¶¶14,19). | |
| 13. Moulsley and/or Baker attended every RAN1 meeting from 1999-2008.(Ex. 3 ¶18). | Denied.  According to Moulsley, at least one of Moulsley, Baker *or Hunt* attended these meetings. D.I. 162 Ex. 4, 26:24-27:6. |
| 14. Before the named inventors proposed technical contributions to RAN1, or commented on other participant's proposals, Philips filed patent applications on the allegedly same subject matter that was submitted to RAN1. (Ex. 3 Min ¶¶20,25,35-41,49,59-61,65,73-79,90,103,106-110,112,117,120-128,133,135-136, 143-147; see also id. 27,30-32,34,42-45,63-66,71-72,100-103,140,149,150,154). Philips' proposals were incorporated in the 3G and 4G wireless standards (See Id., at ¶¶46-47,49-51,74-80,103-105,106-112,125-128,135,143-147,149,159). Those applications resulted in patents that Philips now alleges Telit infringes. (Id., at 20,60,90,117,133). | Denied for insufficient evidence.  Telit did not attach as exhibits the documents cited in Min's report.

Further denied as ambiguous.  No "technical contributions" or "comment[s] on other participant's proposals" are identified. |
| 15. For some of the patents, Philips filed patent applications a few days before the named inventors made related technical proposals to RAN1. (Ex. 9, at ¶30 citing Ex. 3 ¶¶20,35,39-40,59-66,71-79,85,117-124). | Denied for lack of specificity.  No patents or allegedly "related technical proposals" are identified.  Further denied as "few days" is ambiguous.

Denied for insufficient evidence.  Telit did not attach as exhibits the documents cited in Min's report. |
| 16. Philips' filed patent applications on wireless communications standards, then sent the named inventors to 3GPP meetings to submit the subject matter of those | Denied for lack of specificity.  No "patent applications", "named inventors", "3GPP meetings", or "standards containing Philips' proposals" are identified.  Further |

| | |
|---|---|
| applications as a proposed standard. (Ex. 17 Tr. at 39:23-42:1,88:21-89:3). And that is what happened here: years after the standards containing Philips' proposals were adopted, Philips informed ETSI that it had IPR allegedly covering the standard. (Ex. 18 ¶¶23-24,31-32,37-38,46-47; see also Ex. 3 ¶¶20,27,30-32,34-35,39,42-45,58,60-66,71-74,75-79,89,90,100-103,106-108,116-117,120-121,124-127,132-133,135-136,140,143-147,149-150,166). | denied as not all relevant standards in this case emanated from Philips' proposals. *See, e.g.*, D.I. 162 Ex. 3, ¶23.<br><br>Further denied as "that is what happened here" is ambiguous.<br><br>The second statement is further denied for insufficient evidence. Telit did not attach as exhibits the documents cited in Min's report. |
| 17. Philips now bases its infringement allegations against Telit on parts of the standards that included the technical proposals that its employees made to RAN1. (Ex. 3 Min ¶¶33-38,42-44,48,51-54,66-69,71-79,100,103-112,125-128,135-136,140-141,143-149,152,154). | Denied as not all relevant standards in this case emanated from Philips' proposals (*see* ¶16, above). |
| 18. Philips' entire case against Telit is based on the allegedly infringing 3G and 4G standards (D.I. 61 ¶¶124,150,175,190,208,224), that included Baker's and Moulsley's proposals. (Ex. 3 ¶¶42-47,50-51,63-66,75-80,100,103-105,109-112,125, 127-128, 135-137,130,141,143-147,149). | Denied as not all relevant standards in this case emanated from Philips' proposals (*see* ¶16, above).<br><br>Further denied as not all proposals identified were from Baker or Moulsley.<br><br>Further denied for insufficient evidence. Telit cites to paragraphs of Min's report that cite to documents not submitted by Telit. |
| 19. Philips did not declare the IPR associated with the asserted patents until long after ETSI had published the accused standards:<br>[table omitted] | Denied as improper statement of fact. It is unclear whether the table is meant to be a separate statement and if so, what the statement is. Further denied as "long after" is ambiguous. |

| | |
|---|---|
| | Further denied as several dates in the table are inaccurate. For example, Philips made a general declaration in 1998, which covered all asserted patents. Ex. 2. Also, Philips made a specific declaration for the '577/'599 patents on November 26, 2009. Ex. 4. |
| 20. Philips does not dispute the patent application dates or the dates the IPR associated with the patents were first declared to ETSI for the accused standards (Ex. 19 ¶¶324,328,330,333,335,337; Ex. 20 ¶¶222-226; Ex. 21 Tr. 87-91). | Denied for lack of specificity as no "dates" are identified.<br><br>To the extent this statement refers to the table from No. 19, further denied as no "patent application dates" are included and denied for the reasons stated in ¶19, above. |
| 21. Kevin Scott, Philips' licensing program leader, prepared Philips' 2003 IPR declaration, (Ex. 22 Tr. 16,65-66; see also Ex. 23 Tr. 117), and was listed as the contact in Philips' 2009 IPR declaration (Ex. 24 at KPNV0000699). | Denied as Kevin Scott testified that multiple people were involved in the preparation of the 2003 declaration. 9/20/2023 Silva Decl. Ex. 86, 65:17-67:17. |
| 22. Scott also handled Baker's and Moulsley's patent applications. (Ex. 17 Tr.,83-84). | Denied as vague as to the meaning of "handled". Further denied for insufficient evidence as the testimony cited does not say that Scott handled Baker's and Moulsley's patent applications. |
| 23. Scott admitted Philips did not attempt to draft claim charts for the IPR declarations until after the standards were adopted. Gildas Bossard, who succeeded Scott, agreed that that was the case. (Ex. 22 Tr. 252:4-253:9; Ex. 2 Tr.101:3-8, 112:12-16; Ex. 17 Tr. 48,50:9-18,67-68,259; Ex. 23 Tr. 91,117). | Denied as lacking specificity, with Scott not asked about particular patent families. |

| | |
|---|---|
| 24. Moulsley testified that Philips' "patent department would" have known "[i]f there was going to be a submission to 3GPP or something which was the subject of a patent application." (Ex. 4, Tr. 64:25-65:22). | Admitted. |
| 25. Scott admitted that Philips' licensing program (i.e., patent assertion) for its 3G patents had "been dormant waiting for a significant market to develop." (Ex. 25 at 271) quoting Ex. 8 at PRSNA-ITC0520931) (emphasis added.) | Admitted. |

### **Statements Creating a Genuine Issue of Material Fact**

Philips incorporates statement Nos. 16-56 of its Concise Statement of Facts (D.I. 146). These statements and the statements below create a genuine issue of fact.

1. The 1993 IPR Policy and Undertaking ("1993 Policy") included a "license-by-default" provision, which provided that if an IPR holder did not identify IPR within 180 days, it was required to license the IPR. Ex. 39 at KPNV0014958; Ex. 8, ¶¶82-84.

2. Clause 6.3 of the 1993 Policy provided that an IPR holder could not seek damages for patent infringement committed prior to the date the IPR was disclosed to ETSI. Ex. 39, KPNV0014960; Ex. 8, ¶¶ 85, 107.

3. Several companies, including Philips, opposed the 1993 Policy. Ex. 8, ¶¶90-104 (citing Exs. 41-54).

4. The 1993 Policy was never put into operation and was abandoned at the ETSI General Assembly in 1994. Ex. 8, ¶¶105-109; 9/20/2023 Silva Decl. Ex. 88, at KPNV0043523, KPNV0043547.

5. In 1994 a new ETSI IPR Policy was adopted, which did not include a "licensing-by-default" provision or a provision forbidding past damages prior to disclosure. Ex. 40; Ex. 8, ¶¶110-112.

6. Philips and 22 other companies submitted general declarations in 1997-98, and ETSI never criticized as untimely any subsequent specific disclosures by these companies. Ex. 7, ¶¶312-13; Ex. 8, ¶190.

7. In 2002, the General Assembly ("GA") created an ad-hoc IPR group ("AHG") tasked to review the IPR Policy interpretation. Ex. 10, ¶26; Ex. 1 at KPNV0038118.

8. The ETSI GA approved the 30 Recommendations in the AHG's Report in 2003. Ex. 10, ¶66; Ex. 34.

9. The AHG's Report was used to create the Guide on IPRs in 2004. Ex. 1 at KPNV0038118.

10. The AHG made comments on how general declarations satisfy the objectives of the IPR Policy. *See, e.g.,* Ex. 24 at KPNV0008298; *see also id.* at KPNV0008300; Ex. 26 at KPNV0008345; Ex. 28 at KPNV0008739; Ex. 29 at KPNV0008755.

11. The AHG recommended that the Guide on IPRs "should encourage Members to use general IPR undertakings/declarations and then provide or refine detailed IPR disclosures as more information becomes available", and this recommendation was incorporated into the Guide. Ex. 33 at KPNV0020514; Ex. 1 at KPNV0038122.

12. Comments by the AHG affirmed that IPR declarations could be submitted after the date a standard is "adopted" if the IPR holder committed to license the IPR on FRAND terms. This includes the ETSI Director General: "IPRs are not something to be afraid of – only late arrival of a non-availability is a problem. Statement agreed by all present." Ex. 24 at KPNV0008301; *see also* Ex. 25 at KPNV0008358; Ex. 29 at KPNV0008755-8756; Ex. 26 at KPNV0008345; Ex. 30 at KPNV0008603. This concept was also reflected in the AHG's Report (Ex. 33 at KPNV0020512; *see also id.* at KPNV00020515) and the Guide on IPRs (Ex. 1 at KPNV0038122 (Section 2.1)).

13. During the AHG, and at other times, various members made proposals to modify Clause 4.1 to include specific deadlines for disclosure and/or to render patents unenforceable if disclosed in an untimely manner, none of which were adopted. Ex. 21 at KPNV0008234-35; Ex. 22 at KPNV0008246; Ex. 27 at KPNV0008369; Ex. 32 at KPNV0008539; Ex. 23 at KPNV0008243; Ex. 25 at KPNV0008362; Ex. 31 at KPNV0008510; Ex. 38 at KPNV0009207.

14. In the AHG's Report, it recommended that ETSI consider adding a time limit to the IPR Policy for IPR declarations. Ex. 33 at KPNV0020515.

15. The majority of IPR declarations are submitted to ETSI after the corresponding Releases are frozen. Ex. 7, ¶¶263-264.

16. The majority of declarants made 100% of their IPR declarations after the date Telit claims Clause 4.1 requires. *Id.*, ¶266.

17. Only three companies that made a general declaration in 1997-98 had submitted any specific declarations when the first UMTS Release was frozen in December 1999. *Id.*, ¶¶312-13.

18. In the late 1990s, Philips had hundreds of IPRs directed to radio access technologies and was filing new applications in this area. D.I. 158, ¶5.

19. By May of 2000, Philips' employees were conducting regular internal meetings to review Philips' IPRs and ETSI standards. *Id.*, ¶6.

20. Philips never intentionally delayed in identifying any patents to ETSI. *Id.*, ¶10.

21. The IPRs declared by Philips in December of 2014 were identified through a patent portfolio search. D.I. 159, ¶3.

22. The ETSI Guide on IPRs states that consideration of IPRs by technical working groups is forbidden. Ex. 1 at KPNV0038119, KPNV0038123-24, & KPNV0038131 (Clauses 1.1, 2.2, 2.3, and 4.1).

23. Antti Toskala is the former Chair of 3GPP RAN Working Group 1 ("WG1") and has attended 98 of the 99 TSG RAN plenary meetings.  Ex. 9, ¶7.

24. Matthew Baker is also the former Chair of WG1 and has attended WG1 meetings since 1999.  Ex. 14, 119:13-123:20.

25. Per both Mr. Baker and Mr. Toskala, 3GPP Working Groups are not permitted to consider IPRs in technical decision making nor has WG1 ever done so.  Ex. 9, ¶¶59, 63; Ex. 14, 123:11-124:19.

26. Statements made at the AHG confirm that IPRs are not considered in technical decision making in 3GPP Working Groups.  Ex. 24 at KPNV0008300-301; Ex. 25, KPNV0008356-57.

27. Matthias Schneider testified "IPRs are never supposed to be discussed [in technical meetings], whether or not you reach a consensus."  Ex. 19, 367:11-368:7.

28. Since March 2011, the average time it took ETSI to publish IPR declarations in IPR online database was 88 days for paper declarations and 23 days for online-submitted declarations.  Ex. 7, ¶88; *see also* Ex. 69, ¶441.

29. It is not mandatory to put the "illustrative part of the standard" in IPR declarations.  Ex. 7, ¶88; Ex. 9, ¶71; Ex. 19, 170:13-24.

30. The earliest publication of the patent family for the '028 and '216 patents-in-suit was July 20, 2000, after UMTS Release 99 was frozen.  Ex. 9, ¶85.

31. The ETSI Guide on IPRs indicates that the opportunity to declare essential IPR does not close when a standard is adopted. Ex. 1 at KPNV0038133-35 (Clauses 4.6.2.3 & 4.6.3.4); Ex. 8, ¶175 n.204 & ¶200; Ex. 7, ¶237; Ex. 10, ¶96; Ex. 6, ¶¶129, 160.

| | |
|---|---|
| *Of Counsel*: | YOUNG CONAWAY STARGATT & TAYLOR, LLP |
| Eley O. Thompson<br>FOLEY & LARDNER LLP<br>321 North Clark Street, Suite 2800<br>Chicago, IL 60654-5313<br>(312) 832-4359<br>ethompson@foley.com | */s/ Robert M. Vrana*<br>Adam W. Poff (No. 3990)<br>Robert M. Vrana (No. 5666)<br>Alexis N. Stombaugh (No. 6702)<br>1000 N. King Street<br>Wilmington, DE 19801<br>(302) 571-6600<br>apoff@ycst.com<br>rvrana@ycst.com<br>astombaugh@ycst.com |
| Kevin M. Littman<br>Lucas I. Silva<br>FOLEY & LARDNER LLP<br>111 Huntington Avenue<br>Suite 2500<br>Boston, MA 02199-7610<br>(617) 342-4000<br>klittman@foley.com<br>lsilva@foley.com | *Attorneys for Plaintiff Koninklijke Philips N.V.* |

Dated: September 20, 2023

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that Philips' Responses to Telit's Concise Statement of Undisputed Material Facts is in Times New Roman 14-point font and contains 1,711 words, exclusive of caption, tables, and signature block, counted using Microsoft Word's word count feature.

| | |
|---|---|
| *Of Counsel*: | YOUNG CONAWAY STARGATT & TAYLOR, LLP |
| Eley O. Thompson<br>FOLEY & LARDNER LLP<br>321 North Clark Street, Suite 2800<br>Chicago, IL 60654-5313<br>(312) 832-4359<br>ethompson@foley.com | */s/ Robert M. Vrana*<br>Adam W. Poff (No. 3990)<br>Robert M. Vrana (No. 5666)<br>Alexis N. Stombaugh (No. 6702)<br>1000 N. King Street<br>Wilmington, DE 19801<br>(302) 571-6600<br>apoff@ycst.com |
| Kevin M. Littman<br>Lucas I. Silva<br>FOLEY & LARDNER LLP<br>111 Huntington Avenue<br>Suite 2500<br>Boston, MA 02199-7610<br>(617) 342-4000<br>klittman@foley.com<br>lsilva@foley.com | rvrana@ycst.com<br>astombaugh@ycst.com<br><br>*Attorneys for Plaintiff Koninklijke Philips N.V.* |

Dated:  September 20, 2023

## CERTIFICATE OF SERVICE

I hereby certify that on September 20, 2023, I caused a copy of the foregoing document to be served via electronic mail upon the following counsel:

>Jack B. Blumenfeld, Esquire
>Anthony D. Raucci, Esquire
>Morris, Nichols, Arsht & Tunnell
>1201 North Market Street
>P.O. Box 1347
>Wilmington, DE  19899
>*jblumenfeld@mnat.com*
>*araucci@mnat.com*

>David Loewenstein, Esquire
>Clyde Shuman, Esquire
>Kyle Auteri, Esquire
>Pearl Cohen Zedek Latzer Baratz LLP
>7 Times Square, 19th Floor
>New York, NY 10036
>*dloewenstein@pearlcohen.com*
>*cshuman@pearlcohen.com*
>*kauteri@pearlcohen.com*

>*TelitTeam@pearlcohen.com*

>*Attorneys for Telit IoT Solutions, Inc. and Telit Communications Ltd.*

Dated:  September 20, 2023

YOUNG CONAWAY STARGATT
  & TAYLOR, LLP

*/s/ Robert M. Vrana*
Adam W. Poff (No. 3990)
Robert M. Vrana (No. 5666)
Alexis N. Stombaugh (No. 6702)

27587903.1

2

Rodney Square
1000 North King Street
Wilmington, Delaware 19801
(302) 571-6600
*apoff@ycst.com*
*rvrana@ycst.com*
*astombaugh@ycst.com*

*Attorneys for Plaintiff*